IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORMAN RONNIE HANSEN, | C 11-3568 TEH (PR) |
|     Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY |
| v. | |
| FRANK X. CHAVEZ, Warden, | |
|     Respondent. | |

Petitioner Norman Ronnie Hansen, a state prisoner incarcerated at Sierra Conservation Center (SCC) located in Jamestown, California, filed this pro se action seeking a writ of habeas corpus under 28 U.S.C. § 2254. The matter is now before the Court for consideration of the merits of the habeas petition. For the reasons discussed below, the petition will be DENIED.

I

On December 10, 2008, Petitioner was sentenced in Santa Clara County Superior Court to thirteen years following his guilty plea. 11 Clerk's Transcript (CT) 2843-2847.

Petitioner appealed his conviction in the California Court of Appeal and also filed a state petition for a writ of habeas corpus asserting ineffective assistance of counsel. The Court of

Appeal consolidated the two cases.  On November 23, 2010, in an unpublished decision, the California Court of Appeal affirmed the judgment and denied the habeas petition.  People v. Hansen 2010 WL 4739532 (Cal. Ct. App. Nov. 23, 2010).  On March 21, 2011, the California Supreme Court summarily denied review.  Respondent. Exh. 11.  On January 7, 2011, Petitioner filed a habeas petition in the California Supreme Court.  Respondent. Exh. 12.  On June 15, 2011, the California Supreme Court summarily denied the petition.  Respondent's Exhibit 8.

On July 20, 2011, Petitioner filed the instant federal petition asserting the following claims: (1) the trial court violated his right to due process by imposing consecutive sentences based on the facts underlying counts dismissed in his plea bargain, in violation of People v. Harvey, 25 Cal. 3d 754 (1979); (2) ineffective assistance of counsel based on counsel's failure to raise a Harvey violation objection at sentencing; (3) the trial court violated his right to due process because it exceeded its sentencing discretion under California law; (4) the trial court violated his due process rights by relying on the same set of factors to impose a sentencing enhancement and consecutive sentences; and (5) ineffective assistance of counsel for failing to object to the due process violation in claim four.  On February 3, 2012, this Court ordered Respondent to show cause as to why the petition should not be granted.  Respondent filed an answer; Petitioner filed a traverse.

2

## II

The following factual background is taken from the order of the California Court of Appeal.

> Pursuant to a plea agreement, defendants Norman Ronnie Hansen and Joseph Maloof pleaded guilty to multiple counts arising from their fraudulent operation of three travel agencies. The defendants admitted certain enhancing allegations, and Hansen admitted having a strike prior conviction within the meaning of Penal Code sections 667, subdivisions (b)-(c) and 1170.12. The remaining counts and enhancements were dismissed and, after the trial court granted Hansen's Romero motion [striking the prior conviction], the defendants were sentenced to a total terms of thirteen years.
>
> . . .
>
> On April 25, 2008, defendants were charged by information with embezzlement by trustees (§ 506, count 1); nine counts of failure to provide travel services or make refunds (Bus. & Prof. Code, § 17550.14, subd. (a)(1), counts 2, 4, 5, 6, 8, 11, 12, 13, 14); three counts of theft or embezzlement from an elder or dependent adult (§ 368, subd. (d), counts 3, 7, 9); writing a check with insufficient funds (§ 476a, count 10), unlawful encumbrance of a trust account by a "seller of travel" (Bus. & Prof. Code, § 17550.15, subd. (c), count 15); two counts of money laundering of more than $5,000 (§ 186.10, subd. (a), counts 16, 17), and theft of funds received as insurance premium (Ins. Code, § 1733, count 18). Hansen was additionally charged with presenting a false insurance claim (§ 550, subd. (a)(1), count 19).
>
> The information further alleged that Hansen had suffered a strike prior conviction. (§§ 667, subds. (b)-(c), 1170.12.) As to the embezzlement count, the information alleged that defendants took property with a value exceeding $1 million (§ 12022.6, subd. (a)(3)), and with respect to the nine counts of failure to provide travel services or refunds that each defendant obtained $1,000 or more within a consecutive 12 month period from all persons, and $400 or more from one person in a 12 month period (Bus. & Prof. Code, § 17550.19, subd. (b)). The information also alleged an aggravated white collar crime enhancement (§ 186.11, subd. (a)(1), (2)) on the basis that the crimes involved a pattern of felony conduct resulting in the taking of more than $500,000.
>
> On May 6, 2008, defendants pleaded guilty to counts 1, 2, 4, 5, 6, 8, and 10 through 16. They also admitted the allegations pursuant to section 12022.6, subdivision (a)(3) and Business and Professions Code section 17550.19, subdivision (b). Hansen

3

admitted having a felony strike prior conviction. All remaining counts and enhancements were dismissed. Maloof was advised that he could be sentenced to a maximum term of 14 years. Hansen was advised that he faced a maximum term of 28 years in prison unless his Romero motion was granted, in which case his maximum sentence would be 14 years.

Hansen's Romero motion was granted, and on December 10, 2008, defendants were each sentenced to a total prison term of 13 years.

Maloof and Hansen owned and operated, were employed by, and/or purchased three related travel agencies: JM Travel Selections (TS), based in Santa Clara County; ITS International Tours (ITS), based in Louisiana; and International Grand Tours (IGT), based in Santa Clara County. From 2003 through 2005, defendants received payment from a number of victims totaling in excess of $1.2 million for travel services, mostly involving group travel for schoolchildren and religious pilgrimages. The defendants failed to provide the arranged and paid for travel services, and failed to refund the monies paid.

During the course of their operations, the defendants repeatedly used funds received from clients to meet other unrelated financial obligations, and would attempt to delay the purchase of travel services until a later group of victims could submit payment for an unrelated travel service. The funds deposited by victims were transferred out of the travel agencies' accounts for numerous reasons, including but not limited to the following: paying outstanding debts to other creditors; deposits into the defendants' personal accounts; purchasing and paying off the debt on personal vehicles, such as a Toyota Celica purchased by Maloof's daughter; purchasing meals and day-to-day necessities; and purchasing travel services for defendants' family, friends and associates, such as a cruise for Hansen's wife and a number of TS employees.

Defendants also laundered funds from one company to another, using personal accounts and numerous banks to transfer the funds. They also charged some of their victims for travel insurance, but failed to purchase any such insurance. Because the defendants had "a fiduciary responsibility with respect to all sums received for transportation or travel services" under Business and Professions Code section 17550.15, subdivision (g), their use of the victims' funds for unrelated expenses and outstanding debts constituted embezzlement.

As the amount of money defendants owed grew, their scheme broke down, as they no longer had enough money on hand to purchase the travel services for which they had received payment. At that point, defendants began adding fraudulent surcharges to their bills in an attempt to increase their cash flow. These

4

surcharges included extra fees for "currency fluctuations," despite there being no such fluctuations, as well as "air taxes" and "fuel surcharges" supposedly imposed by the airlines, even though no airline tickets were purchased.

In all, more than 600 individual victims were harmed by defendants' actions.  Defendants failed to provide travel services paid for, failed to honor requests for refunds or provide refunds within the time provided by law after cancelling trips or allowing scheduled departure dates to lapse.  On numerous occasions, defendants would send refund checks to victims, knowing that there were insufficient funds to cover the checks, which would subsequently bounce.

. . .

At the sentencing hearing, which took place over three days, two witnesses testified on Hansen's behalf and Maloof spoke at length explaining his version of what happened and in which he placed the majority of the blame on Hansen.  Hansen spoke briefly on his own behalf, stating that he never intended to take anyone's money and that he intended to pursue insurance claims to recoup his clients' funds.  The prosecutor and Hansen's counsel each submitted detailed sentencing memoranda to the court.  The prosecutor also presented several taped victim statements to the court.

Before pronouncing sentence, the trial court noted that the defendants had presented conflicting versions of what took place, each of them pointing the finger of blame at the other." . . . [¶].  What there's no question about in my mind and which nobody can dispute is there are a lot of victims in this case; every kind and of every category, and that's somewhat overlooked."

The court praised the probation department for preparing an excellent report with multiple letters, each of which the court had read.  The letters, along with the victims' recordings played by the prosecutor, helped the court appreciate the emotional impact of defendants' crimes.  The court noted that many of the victims were young students who worked for money to take the trips in question, teachers whose reputations were damaged when parents accused them of taking the funds, as well as elderly people who lost once in a lifetime opportunities.

The court found that both defendants were "pretty much in the same position as far as the court has considered regarding . . . their culpability and responsibility so both will be sentenced to exactly the same sentence."  The court denied probation, citing "the seriousness of the case, the sophistication and planning that was involved, the large number of victims and the amount of the losses."

5

> In pronouncing sentence, the court "considered both aggravating and mitigated sentencing factors pursuant to [California] Rules of Court [rules] 4.421 and 4.423.  In all honesty the court finds that the aggravating factors far outweigh any mitigating factors that would apply.  However, due primarily to the fact that this case was resolved early without a trial the court will be considering imposing mid-terms instead of aggravating terms on each count.  [¶] The court is going to choose to run consecutive [sentences on] each of the counts[.]  I base that primarily on the rule of court that addresses that issue and the recognition that . . . several charges were dismissed, and the evidence also shows that there are literally hundreds of victims that are not reflected in any of the counts that were pled guilty to.  Groups of victims and other victims that were not involved in any so to the extent that you've explained why they are concurrent, I'm not necessarily rejecting that, I'm just indicating that I'm deciding to run the charges—or the sentences consecutive because I feel that the crimes do reflect separate instances of conduct and separate victims or groups of victims."
>
> The court then imposed the mid-term sentence of two years on count 1, with a three year enhancement for excessive taking under section 12022.6, for a total of five years.  On each of the remaining 12 counts the middle term was two years, so the court imposed one third the middle term, or eight months, consecutive sentences for a total term of 13 years.

**Hansen**, 2010 WL 4739532 at *1-4.

## III

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, a federal court may not grant a writ of habeas corpus on any claim adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Williams (Terry) v. Taylor, 529 U.S. 362, 412-13 (2000).  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must be objectively unreasonable."  Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citation omitted).  Moreover, in conducting its analysis, the federal court must presume the correctness of the state court's factual findings, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  As the Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'"  Felkner v. Jackson, __ U.S. __, 131 S. Ct. 1305, 1307 (2011) (citation omitted).

When applying these standards, the federal court should

7

review the "last reasoned decision" by the state courts. <u>Avila v. Galaza</u>, 297 F.3d 911, 918 n.6 (9th Cir. 2002). Because the California Supreme Court summarily denied Petitioner's petition for review of his direct appeal and his petition for a writ of habeas corpus, this Court looks to the California Court of Appeal's November 23, 2010 written opinion affirming the trial court's judgment and denying his petition for a writ of habeas corpus.

With these principles in mind regarding the standard and scope of review on federal habeas, the Court addresses Petitioner's claims.

## IV

### A

In his first claim for relief, Petitioner contends that his sentence amounted to a violation of due process under <u>Santobello v. New York</u>, 404 U.S. 257 (1971) because he was sentenced to consecutive terms allegedly based on dismissed counts in violation of <u>Harvey</u>. Petitioner. at 6. Respondent counters that this claim is procedurally defaulted and, even if the Court could address its merits, the Court of Appeal's denial of this claim on its merits was not unreasonable. Respondent. Ans. at 7.

The state Court of Appeal found that this claim was procedurally barred, and also denied it on its merits as follows:

> Defendants contend that the trial court improperly relied on dismissed counts to impose fully consecutive subordinate terms, in violation of <u>Harvey</u>.
>
> Defendants were initially charged with one count of embezzlement, nine counts of failure to provide travel services or make refunds, three counts of theft or embezzlement from an elder or dependent adult, one count of making a check with

8

> insufficient funds, one count of unlawful encumbrance of a trust account by a seller of travel, two counts of money laundering and one count of theft of funds received as an insurance premium. Hansen was also charged with presenting a false insurance claim. They both pleaded guilty to all counts except for the three counts charging theft or embezzlement from an elder or dependent adult, one count of money laundering, and theft of funds received as an insurance premium, and those counts were dismissed. Hansen also did not plead guilty to the charge of presenting a false insurance claim, and that count was also dismissed. Both defendants admitted certain enhancements and Hansen admitted having suffered a strike prior conviction.
>
> Neither defendant raised a Harvey objection at the sentencing hearing. It is well-settled that "complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal." (People v. Scott (1994) 9 Cal.4th 331, 356.) Thus, defendants' claim has been forfeited. However, even if we were to consider it, there is no merit to the contention.
>
> In Harvey, the California Supreme Court held that, where a plea is entered on condition that other counts be dismissed, it is an "[i]mplicit" term of the plea agreement "(in the absence of any contrary agreement) that defendant will suffer no adverse sentencing consequences by reason of the facts underlying, and solely pertaining to, the dismissed counts." (Harvey, 25 Cal.3d at 758.) However, Harvey does not apply where the dismissed counts were "transactionally related" to the count to which the defendant pleaded. Id.
>
> The record is clear that the court decided to impose consecutive sentences based on the separate occasions and separate victims involved in the nine counts at issue. It is true that the trial court mentioned that several charges against the defendants had been dismissed pursuant to the plea bargain, but it made that reference in the context of criticizing the prosecutor's more lenient sentencing recommendation. The trial court does not discuss the dismissed counts in articulating the reasons why it was imposing consecutive sentences on counts 2, 4, 5, 6, 8, and 10 through 16. Instead, the trial court explicitly stated that those sentences would run consecutively because the nondismissed counts took place on different occasions and involved separate victims.

Hansen, 2010 WL 4739532 at *6-7.

Petitioner concedes that this claim is procedurally barred but argues that he shows cause and prejudice based on counsel's ineffective assistance in not objecting to it at Petitioner's

9

sentencing hearing.  As discussed below, counsel was not ineffective, and therefore the claim is procedurally barred.  However, even if it were not procedurally barred, it fails on its merits.

Under Santobello, a criminal defendant has a due process right to enforce the terms of his plea agreement.  404 U.S. at 261-62.  When a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.  Id. at 262.  The construction and interpretation of state court plea agreements "and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law." Buckley v. Terhune, 441 F.3d 668, 695 (9th Cir. 2006)(quoting Ricketts v. Adamson, 483 U.S. 1, 6 n.3 (1987)).  State courts are presumed to know and follow the law.  Woodford v. Visciotti, 537 U.S. 19, 24 (2002).  A state appellate court's factual findings are also presumed correct in the absence of clear and convincing evidence to the contrary.  William v. Rhodes, 354 F.3d 1101, 1108 (9th Cir. 2004).

Here, the state Court of Appeal made a factual finding that the trial court based the sentence solely on the nine counts to which Petitioner pleaded guilty.  It found that, although the trial court mentioned the dismissed charges, it made that reference in the context of criticizing the prosecutor's more lenient sentencing recommendation.  Hansen, 2010 WL4739532 at *7.  Additionally, the appellate court found that the trial court explicitly stated that the sentence would run consecutively because the nondismissed counts took place on different occasions and involved separate victims.

10

**Id.** Without evidence to the contrary, these factual findings are presumed to be correct.

The trial court stated it was imposing consecutive terms because "the crimes do reflect separate instances of conduct and separate victims or groups of victims." Reporter's Transcript (RT) 268. After selecting the base term, the trial court emphasized that the additional eight-month sentence for each of the remaining counts was to run consecutive, "again reflecting separate occasions and against separate victims." RT 469. The record below provides ample support for the trial court's decision. The counts with which Petitioner was charged involved separate occasions and separate victims as follows:

> Count 2: June 29 to August 25, 2005; victims named as Canadian Rockies tour group with leader Marilyn Cole and Roberta Kraynick;
>
> Count 4: September 21 to November 2, 2004; victims named as Pilgrims from Archiocese of Kansas City with group leaders Rev. James Kelcher and Susan Carroll;
>
> Count 5: October 18 to December 23, 2004; victims named as Pilgrims from Michigan Catholic Radio with group leader John Kruse;
>
> Count 6: September 20 to November 31, 2004, victim named as Barbara Collins;
>
> Count 8: September 27 to February 2, 2005; victim named as Charles Newger;
>
> Count 10: On or about January 5, 2005; wrote check with insufficient funds drawn on Wells Fargo Bank;
>
> Count 11: May 19 to July 11, 2005; victims named as Students of Edwardsville High School with group leader Marion Thompson;
>
> Count 12: June 13 to August 3, 2005; victims named as the Students of Depew High School with group leader Angela Roeser;
>
> Count 13: June 9 to July 21, 2005; victims named as the Students of Fairmont High School with group leader Amy Dunaway-Haney;

11

>Count 14: June 23 to August 16, 2005; victims named as Jeff and Martha Davis;
>
>Count 15: September 1 to September 24, 2004 – unlawful encumbrance of trust account by taking money from the trust account for a purpose other than that authorized by law;
>
>Count 16: December 17 to 20, 2004; money laundering.

CT at 394-400.

Based on these counts, the trial court properly imposed consecutive terms and there was no violation of the plea agreement or denial of due process under Santobello. Therefore, it was not objectively unreasonable for the Court of Appeal to determine that there was no Harvey violation because Petitioner was not sentenced to consecutive terms based on the dismissed charges, but rather on the nondismissed counts involving separate crimes and separate victims.

B

In his second claim, Petitioner argues that he suffered ineffective assistance of counsel because his attorney failed to object to the Harvey violation at sentencing. Petitioner. at 6; Trav. at 8. Respondent argues that this claim is procedurally defaulted. Resp. Ans. at 10. The Court addresses this claim on its merits.

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, a petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is

12

1  a reasonable probability that, but for counsel's unprofessional
2  errors, the result of the proceeding would have been different."
3  Id. at 694.  A reasonable probability is a probability sufficient to
4  undermine confidence in the outcome.  Id.  Trial counsel cannot have
5  been ineffective for failing to raise a meritless motion.  Juan H.
6  v. Allen, 408 F.3d 1262, 1273 (9th Cir. 2005); Rupe v. Wood, 93 F.3d
7  1434, 1445 (9th Cir. 1996).
8         The Court of Appeal rejected Petitioner's argument that
9  his counsel was ineffective for failing to raise a Harvey objection
10 at sentencing because the objection was meritless and Petitioner was
11 not prejudiced.  Hansen, 2010 WL 4739532 at *7.  As discussed above,
12 a Harvey objection would have been without merit because there was
13 no violation.  Trial counsel's performance was not deficient for
14 failing to make a meritless objection.  The state appellate court's
15 denial of this claim was not unreasonable.
16                               C
17        In his third claim for relief, Petitioner argues that the
18 trial court mistakenly believed that it could impose consecutive
19 sentences of one-third the upper term and did not exercise informed
20 discretion when it sentenced him to consecutive sentences of one-
21 third the middle term.  Pet. at 6.  Respondent argues that this
22 claim does not raise a federal constitutional issue.  Resp. Ans. 11.
23        The Supreme Court has repeatedly held that the federal
24 habeas writ is unavailable for violations of state law or for
25 alleged errors in the state's interpretation or application of its
26 own laws.  Swarthout v. Cooke, 131 S. Ct 859, 861-62 (2011); Estelle
27 v. McGuire, 502 U.S. 62, 67-68 (1991).  Absent a showing of
28 fundamental unfairness, an assertion that a state court misapplied

13

its own sentencing laws does not justify federal habeas relief. Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994); Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) ("The decision whether to impose sentences concurrently or consecutively is a matter of state criminal procedure and is not within the purview of federal habeas corpus"). Furthermore, a petitioner may not "transform a state-law issue into a federal one merely by asserting a violation of due process." Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996).

Petitioner does not cite to any federal law or constitutional provision in support of this claim. Petitioner's assertion of a due process violation does not entitle him to federal habeas relief unless he can show fundamental unfairness. Langford, 110 F.3d at 1388; Christian, 41 F.3d at 469.

Furthermore, Petitioner fails to show fundamental unfairness. The Court of Appeal found that the trial court exercised informed discretion as follows:

> We presume that the trial court acted in such a way as to achieve legitimate sentencing objectives. (People v. Superior Court (Alvarez) (1997) 14 Cal.4th 968, 977-978.) Consequently, defendants bear the burden to show that the court's ruling was irrational or arbitrary.
>
> The trial court made it clear that it believed that the aggravating factors in this case far outweighed the mitigating factors, but decided to impose the mid-term punishment because the defendants had resolved the case quickly by entering into a plea bargain. The court made this statement before revealing that it would be imposing consecutive sentences on certain counts. Once it indicated that all other counts would run consecutive to the embezzlement count, the court imposed one-third the mid-term sentences on each of those counts. Defendants have not shown that the trial court either misunderstood or failed to properly exercise its discretion in imposing this sentence.

Hansen, 2010 WL 4739532 at *8.

14

The Court of Appeal reasonably concluded that the trial court exercised its discretion correctly. Therefore, there is no indication of fundamental unfairness that warrants habeas relief.

D

In his fourth claim, Petitioner argues that the trial court violated the dual use provision of California Penal Code section 1170(b) by impermissibly imposing a sentencing enhancement and consecutive terms based on the same facts. Pet. at 6. Petitioner cites Wasko v. Vasquez, 820 F.2d 1090, 1091, n.2 (9th Cir. 1987) to claim that he was denied due process because he has a liberty interest in a sentencing right accorded by a state statute, namely California Penal Code section 1170(b). Trav. at 11. In Wasko, the Ninth Circuit concluded that the petitioner had a Fourteenth Amendment liberty interest against excessive punishment that he may be deprived of only to the extent authorized by state statute. Wasko, 820 F.2d at 1091, n.2.

The Court of Appeal denied this claim as follows:

> Defendants argue that the trial court violated the dual use provision of section 1170, subdivision (b) by relying on the same fact to both enhance their sentence for embezzlement and to impose consecutive terms.
>
> As discussed above, the embezzlement and the failure to refund involved separate intents and objectives. The great taking enhancement imposed on the embezzlement count was based solely on the large amount of money which defendants stole. It was merely incidental that the total amount stolen came from a number of victims on many different occasions. The enhancement is triggered solely by a defendant's illgotten gains exceeding a specified dollar amount. It makes no difference if that total amount comes from one victim or from multiple victims. It makes no difference if the taking occurs all at once, or on several occasions. The trial court did not rely on the amount of the money taken, a recognized aggravating factor, in imposing the consecutive terms. Instead, the court expressly relied on the fact that the offenses involved numerous victims and took place on separate occasions. Many of the counts involved groups of people, some of them elderly and

15

some of them students.

Hansen, 2010 WL 4739532 at *8.

The Court of Appeal's conclusion was not objectively unreasonable. At Petitioner's sentencing, the trial court indicated that the crimes to which Petitioner pleaded guilty involved separate events targeting separate victims, and that, overall, a large amount of money was taken. RT 261, 268. The trial court then specified that the consecutive sentences were imposed based on the numerous victims and the number of different occasions. RT 268. Therefore, any liberty interest Petitioner had in being sentenced correctly was not violated.

E

Petitioner's fifth claim is ineffective assistance of counsel for failure to object to the sentencing errors described in claims three and four. In his traverse, Petitioner does not address Respondent's argument that this claim was not exhausted in the state court. Therefore, the Court deems that Petitioner concedes his fifth claim was not exhausted.

On habeas review, a district court may deny an unexhausted claim on the merits. 28 U.S.C. § 2254(b)(2) (habeas claim may be denied on the merits, notwithstanding the failure of the applicant to exhaust state court remedies). As discussed above, Petitioner's sentencing error claims. Trial counsel's performance was not ineffective for failing to make meritless objections. Juan H., 408 F.3d at 1273.

Accordingly, Petitioner's fifth claim is denied.

V

Petitioner raises a new claim for the first time in his

**16**

traverse, claiming that the trial court should have stayed his sentence under California Penal Code section 654.  A traverse, however, is not the proper pleading to raise additional grounds for relief.  In order for the respondent to be properly advised of additional claims, they should be presented in an amended petition or in a statement of additional grounds.  Cacoperdo, 37 F.3d at 507.  Only then can the respondent answer the claims and the action can proceed.  Id.  Thus, the section 654 claim is not cognizable because Petitioner did not raise it in his petition.

CONCLUSION

Based on the foregoing, the Court of Appeal's denial of Petitioner's claims was not contrary to or an unreasonable application of established federal law or an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Therefore, the petition for a writ of habeas corpus is DENIED.

Further, a Certificate of Appealability is DENIED.  See Rule 11(a) of the Rules Governing Section 2254 Cases.  Petitioner has not made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure.  See Rule 11(a) of the Rules Governing Section 2254 Cases.

The Clerk is directed to enter Judgment in favor of

17

Respondent and against Petitioner, terminate any pending motions as moot and close the file.

IT IS SO ORDERED.

DATED      *04/10/2013*

THELTON E. HENDERSON
United States District Judge

G:\PRO-SE\TEH\HC.11\HANSEN 11-3568 Deny Pet.wpd